IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |  |
|---|---|---|
| ANA HENRIQUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-868-M-BN |
| | § | |
| CITY OF FARMERS BRANCH, TEXAS | § | |
| and KEN D. JOHNSON, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This case, reopened on September 30, 2021, *see* Dkt. Nos. 43, 46, remains referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn.

Through a first amended complaint [Dkt. No. 47] (the FAC), Plaintiff Ana Henriquez asserts civil rights violations and assault and battery against Defendants City of Farmers Branch, Texas and Officer Ken Johnson based on Johnson's shooting to death her minor son, J.C.

Johnson responded to the FAC by simultaneously answering it, asserting qualified immunity, *see* Dkt. No. 50, and moving to dismiss it based, in part, on qualified immunity, *see* Dkt. Nos. 48, 49, 50. Under Federal Rule of Civil Procedure 12(d), the Court converted the portion of Johnson's motion to dismiss based on qualified immunity to a Federal Rule of Civil Procedure 56 motion for summary judgment on qualified immunity. *See* Dkt. No. 51.

As further allowed by the Court's conversion order, Henriquez filed a motion for leave to conduct limited discovery in order to respond to the qualified immunity issues raised in the converted summary judgment motion, *see* Dkt. No. 54, and Johnson filed a response, *see* Dkt. No. 55.

For the following reasons, the Court GRANTS IN PART Henriquez's motion for leave to the extent explained below.

## Legal Standards

"Because qualified immunity is an *immunity from suit*, not merely a defense to liability, 'it is effectively lost if a case is erroneously permitted to go to trial.'" *Ramirez v. Guadarrama*, 3 F.4th 129, 134 (5th Cir. 2021) (per curiam) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The established procedure under which courts must address qualified immunity, once asserted, therefore "prevents a defendant entitled to immunity from being compelled to bear the costs of discovery and other pre-trial burdens." *Id.* (citations omitted). Consequently, all discovery is typically stayed pending a ruling on a defendant's entitlement to qualified immunity. *See Wicks v. Miss. State Employment Servs., Inc.*, 41 F.3d 991, 994-95 (5th Cir. 1995); *accord Zapata v. Melson*, 750 F.3d 481 (5th Cir. 2014); *Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012); *Lion Boulos v. Wilson*, 834 F.2d 504 (5th Cir. 1987); *Webb v. Livingston*, 618 F. App'x 201 (5th Cir. 2015) (per curiam).

But, where a defendant asserts qualified immunity, the Court may, under certain circumstances, permit limited discovery that is narrowly tailored to uncover only facts that the Court needs to rule on the defendant's entitlement to qualified

immunity. *See Wicks*, 41 F.3d at 994; *Backe*, 691 F.3d at 648 ("[T]his court has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense.").

Fundamental to this careful procedure is that, once qualified immunity is asserted in good faith, "the burden is on the plaintiff to demonstrate [its] inapplicability." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc); *see also Joseph v. Bartlett*, 981 F.3d 319, 329-30 (5th Cir. 2020) ("When a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016))).

> *Zapata* articulates the steps a district court must take in an order *authorizing* limited qualified immunity discovery – to avoid entering an order that would deny the defendant the benefits of the defense. The first step of this procedure requires the Court to find that the complaint alleges facts sufficient to overcome qualified immunity. At the second step, the Court must "identify any questions of fact it need[s] to resolve before it would be able to determine whether the defendants [are] entitled to qualified immunity." And the third step requires an examination of the specific discovery requests.

*Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2021 WL 321967, at *2 (N.D. Tex. Feb. 1, 2021) (quoting *Zapata*, 750 F.3d at 485; citation omitted).

Put another way, at the first step, "a plaintiff seeking to overcome QI must assert facts that, if true, would overcome that defense. It is not enough broadly to seek information that might impeach the defendants' version of events." *Hutcheson*

*v. Dall. Cnty., Tex.*, 994 F.3d 477, 481 (5th Cir. 2021) (citing *Zapata*, 750 F.3d at 481). So, at step one, the plaintiff must convince the Court that the pleadings, "taken as true, overc[o]me the qualified immunity defense" because, before authorizing limited discovery, "this holding must be made explicitly" by the district court. *Zanitz v. Seal*, 602 F. App'x 154, 163 (5th Cir. 2015) (per curiam) (citing *Zapata*, 750 F.3d at 485 n.2). Accordingly, the functional equivalent of carrying the step-one burden would be for a plaintiff's pleadings to demonstrate that a motion to dismiss based on qualified immunity should be denied. *See id.* at 163 n.8.

But, even if the Court holds that sufficient facts have been alleged, a plaintiff will still falter at step two by "fail[ing] to identify any question of fact that the court must resolve before determining QI." *Hutcheson*, 994 F.3d at 481 (citing *Backe*, 691 F.3d at 648); *see also Zanitz*, 602 F. App'x at 163 ("Even a 'limited discovery' order does not satisfy the second step if 'the district court [does] not identify any questions of fact it need[s] to resolve before it would be able to determine whether the defendants [are] entitled to immunity.'" (citing *Zapata*, 750 F.3d at 484-85)).

Only after a plaintiff passes through these two gates will the Court examine the specific discovery requests proposed to determine if any are narrowly tailored. *See, e.g., Webb*, 618 F. App'x at 209-11.[1]

---

[1] *Cf id.* at 210 (Contrary to the general rule, "'immediate appeal is available for [qualified immunity] discovery orders which are either avoidable or overly broad.' [But a] district court's discovery order is neither avoidable nor overly broad, and therefore not immediately appealable, when: (1) the defendant's entitlement to immunity turns at least partially on a factual question; (2) the district court is unable to rule on the immunity defense without clarification of these facts; and (3)

## Analysis

As explained above, while the Court is now considering Johnson's assertion of qualified immunity through a motion for summary judgment, he initially moved to dismiss on this ground, explaining that

> Plaintiff fails to factually support her conclusory claim that decedent presented no threat to Defendant at the time of the shooting. This fails to respond to the qualified immunity pleading of Defendant that furtive movements of decedent within the vehicle caused Defendant to reasonably believe that decedent "presented an immediate threat of serious injury" to Defendant. It is established in this Circuit that when a suspect reaches for an unseen area in a manner consistent with reaching for a weapon, use of deadly force is reasonable. Thus, a reasonable basis existed to support the alleged use of force by Defendant.

Dkt. No. 49, ¶ 6 (further asserting that "this issue need not be addressed due to the failure to adequately plead the essential element of 'color of law'" (footnotes omitted)).

Henriquez does indeed allege that her son "never posed any threat of harm to Johnson or any other person that would have justified Johnson's use of deadly force." Dkt. No. 47, ¶ 39. Insofar as this allegation is, in isolation, conclusory, Henriquez's complaint is not. And, solely for the purpose of advancing this matter to a limited discovery phase, the facts alleged, taken as true, do overcome Johnson's right to qualified immunity:

> On March 13, 2016, at approximately 7:00 p.m., 16-year-old J.C. and his friend E.R. were sitting in J.C.'s red Dodge Challenger outside of the Brookhaven Apartments in Addison, Texas.
> Defendant Johnson, who was allegedly not on call as a Farmers

---

the discovery order is narrowly tailored to uncover only the facts necessary to rule on the immunity defense." (quoting *Gaines v. Davis*, 928 F.2d 705, 707 (5th Cir. 1991), then citing *Lion Boulos*, 834 F.2d at 507-08)).

Branch police officer at the time of this incident, allegedly witnessed E.R. taking seats out of Johnson's SUV.

J.C. never exited his vehicle and at no time was involved in allegedly taking Johnson's seats out of the SUV.

J.C. eventually began to exit the Brookhaven Apartment complex by driving out of the parking lot and back onto the main road.

Johnson, who allegedly believed a burglary of his vehicle had just occurred, grabbed his car keys and his Farmers Branch-issued service weapon and ran to his vehicle to give chase to J.C. and E.R.

Johnson suspected J.C.'s vehicle was involved in a burglary because of alleged calls spanning several months of a red Dodge Challenger that had been involved in burglaries.

Johnson, seeing two young Latino boys in the red Challenger, immediately believed them to be suspects and initiated chase.

Unbeknownst to J.C. or E.R., they were being followed by Johnson's SUV.

Immediately upon noticing Johnson's SUV tailing his vehicle closely, J.C.'s vehicle was violently rear-ended by Johnson's SUV.

J.C. continued to drive straight after being rear-ended, looking for a location to safely pull over.

Before being able to take any further action, J.C.'s vehicle was again rear-ended, this time even more aggressively than the first, which caused J.C.'s vehicle to spin out across an intersection and slam into a sidewalk, nearly flipping J.C.'s vehicle over.

Simultaneous to J.C.'s vehicle crashing into the curb, Johnson drove his SUV closely behind J.C.'s vehicle and maneuvered his SUV into the curb, nearly striking a bystander vehicle in the process.

After the crash, J.C. and E.R. remained in the vehicle and were prepared to wait for police to arrive given that the car collision had been severe.

Immediately after causing the collision with J.C.'s vehicle and maneuvering his own SUV into the curb behind J.C., Johnson exited his SUV and shouted "woo-hoo" before brandishing his service weapon and running towards J.C.'s vehicle.

As Johnson approached J.C.'s vehicle he shouted police commands, such as, "Police, police, hands, let me see your hands, let me see your hands."

Merely seconds after the collision, J.C. noticed Johnson approaching his vehicle with his weapon aimed at him. J.C. turned to E.R. and screamed, "Edgar, Edgar!" Before E.R. could reply, a barrage of bullets was shot into the vehicle by Johnson, aimed directly at J.C.

On information and belief, Johnson began to fire his service weapon, a semiautomatic pistol, as he was still nearing J.C.'s vehicle on

> foot and shouting police commands.
> Johnson trained his weapon directly at J.C. and fired multiple rounds without stopping. After shooting J.C. in the head, back and stomach, Johnson opened the driver-side door and continued to fire his service weapon, this time directly at E.R.
> Johnson fired his weapon for several seconds until his clip was fully emptied.

*Id.*, ¶¶ 14-32; *see also id.*, ¶ 38 ("Johnson fired a total of 16 times into the vehicle, killing J.C. and severely wounding E.R.").

And, again, solely for the purpose of advancing this matter to a limited discovery phase, Henriquez's pleadings show that Johnson acted under color of law.

Qualified immunity may be asserted in response to a claim under 42 U.S.C. § 1983. *See Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)). But "[a] plaintiff makes out a § 1983 claim [only] if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Id.* (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

> "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). More simply, "[u]nder 'color' of law means under 'pretense' of law." *Screws v. United States*, 325 U.S. 91, 111 (1945). Generally, if an officer is performing their official duties, their acts "are included whether they hew to the line of their authority or overstep it," though "acts of officers in the ambit of their personal pursuits are plainly excluded." *Id.* That said, even if an officer acts for purely personal reasons, he or she may still act under color of law if they are "acting by virtue of state authority." *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991).
> [Further,] it is "clear that whether a police officer is acting under color of law does not depend on duty status at the time of the alleged

> violation." *Id.* Rather, to determine whether an officer acted under color of law, we must consider: (1) "whether the officer misused or abused his official power" and (2) "if there is a nexus between the victim, the improper conduct, and the officer's performance of official duties." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464-65 (5th Cir. 2010) (cleaned up).

*Gomez v. Galman*, ___ F.4th ____, No. 20-30508, 2021 WL 5371112, at *2-*3 (5th Cir. Nov. 18, 2021) (per curiam) (citation modified); *see also Tarpley*, 945 F.3d at 809 ("This court and other courts of appeals have made clear that whether a police officer is acting under color of law does not depend on duty status at the time of the alleged violation. Nor does *Screws* mean that if officials act for purely personal reasons, they necessarily fail to act 'under color of law.' Rather, *Screws* held simply that individuals pursuing private aims *and* not acting by virtue of state authority are not acting under color of law purely because they are state officers." (citations omitted)); *Laughlin v. Olszewski*, 102 F.3d 190, 192 n.1 (5th Cir. 1996) (in concluding that an off-duty Houston police office hired by a private entity to provide security acted under color of law, observing that, "under Texas law, a police officer's 'off-duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity" (citations omitted)).

Here, it is alleged that, "[a]s Johnson approached J.C.'s vehicle he shouted police commands, such as, 'Police, police, hands, let me see your hands, let me see your hands.'" Dkt. No. 47, ¶ 28. These allegations, taken as true, "demonstrate an 'air of authority'" adequate to show a Section 1983 violation for the limited purpose of the discovery matter now before the Court. *Gomez*, 2021 WL 5371112, at *4 ("Gomez has alleged facts that demonstrate an 'air of authority' not present in *Bustos*. Unlike

Gomez, Bustos did not allege that the off-duty officers gave him orders."). *Cf. id.* ("Our holding does not disturb well-established case law that 'acts of officers in the ambit of their personal pursuits are plainly' not under color of law. We merely hold that, viewed in the light most favorable to Gomez, he has pleaded sufficient facts at this early stage of litigation to suggest that Galman and Sutton were 'acting by virtue of state authority.' His allegations are sufficient to allow this matter to proceed to discovery, where additional fact-finding may support – or vitiate – Gomez's claims." (citations omitted)).

Proceeding to step two, the narrative assertion of qualified immunity in Johnson's answer provides in part that, during his pursuit of J.C. and E.R.,

> [a]s the vehicles continued south on Marsh Lane and approached the intersection with Spring Valley Road, the Dodge quickly decelerated as if it were going to make a left turn. This caught Johnson off guard causing inadvertent contact between the vehicles. Both vehicles then came to a stop in the intersection. Johnson quickly exited his vehicle and approached the Dodge believing that he was yelling loudly "Police. Show me your hands." Johnson believed that this command was issued several times. Johnson initially observed the driver of the Dodge to have his hands on the steering wheel and, as Johnson approached the Dodge, the driver quickly removed his hands from the steering wheel and reached into an area low and between the two front seats. The area where the driver was reaching was not within Johnson's view. In Johnson's experience, this movement was consistent with a fleeing felon (a burglar) reaching for a weapon in a middle console area of the vehicle. Thus, Johnson reasonably feared that the driver presented an immediate threat of serious injury to Johnson. Johnson repeated his verbal command and the driver continued to reach to the area between the seats out of Johnson's view. Johnson then fired his weapon at the driver.

Dkt. No. 50, ¶ 49.

The applicable pleadings therefore present disputed facts. And, as Henriquez

recognizes in her motion for leave, Johnson's version supports his argument for dismissal based on qualified immunity: "Johnson has alleged in his Motion to Dismiss that 'furtive movements of decedent within the vehicle caused Defendant to reasonably believe that decedent presented an immediate threat of serious injury to Defendant.' (Dkt. 49 ¶ 6). Plaintiff's interrogatories seek answers regarding Johnson's assertion and are directly tied to his assertion of the qualified immunity defense." Dkt. No. 54, ¶ 9.

So both sides recognize that these disputed facts – as to what Johnson perceived the moments before he opened fire – are material to the assertion of qualified immunity.

Indeed, "[i]n this circuit 'the excessive force inquiry is confined to whether the officer was in danger at the moment of the threat that resulted in the officer's shooting. Therefore, any of the officers' actions leading up to the shooting are not relevant.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014)).

And "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Id.* (quoting *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003)); *see also Reyes v. Bridgewater*, 362 F. App'x 403, 406 (5th Cir. 2010) ("Unlike some areas of constitutional law, the question of when deadly force is appropriate – and the concomitant conclusion that deadly force is or is not excessive is well-established.... [T]he focus of the inquiry is 'the act that led [the officer] to discharge his weapon.'"

(citing *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985), then quoting *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009))).

The Court therefore requires evidence regarding this material question of fact before it can resolve whether Johnson is entitled to summary judgment – and the attendant claims should be dismissed – based on qualified immunity. *Cf. Reyes*, 362 F. App'x at 409 ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others. Here, the facts are unclear; was there such an immediate threat? [Defendant's] version of the facts would say 'yes,' while [Plaintiffs'] versions would say 'no.' The case presented here is ... one where the facts are not clearly established. As such, summary judgment [is] improper.").

Henriquez has now passed through the first and second gates. But, for the reasons explained at step two, not all the discovery that she seeks from Johnson is narrowly tailored to the question of fact that the Court must resolve. The Court has therefore carefully considered the discovery proposed in Dkt. No. 54-1 and will only compel responses to interrogatories and requests for production narrowly tailored to what Johnson observed the moments prior to his use of deadly force. That is, what "led [him] to discharge his weapon." *Manis*, 585 F.3d at 845.

## Conclusion

The Court GRANTS Plaintiff's Motion for Leave to Conduct Limited Discovery in Response to Ken Johnson's Motion for Summary Judgment [Dkt. No. 54] IN PART. The Court ORDERS Johnson to respond to Interrogatories Nos. 5, 6, 8, 9, and 10 and

Requests for Production No. 1 in Dkt. No. 54-1 by **January 10, 2022**. And, as these discovery responses need not be filed with the Court, the Court further ORDERS Henriquez to notify the Court when Johnson's responses are received.

SO ORDERED.

DATED: December 8, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE